IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KONICA MINOLTA BUSINESS
SOLUTIONS U.S.A., INC.,

        Plaintiff,

v.

SCREENTONE SYSTEMS CORP.,
ACACIA PATENT ACQUISITION CORP.,
ACACIA RESEARCH CORP., and
PAUL S. SNYPP,

        Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

C.A. No. 07-602-GMS

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY
OR TRANSFER PENDING RESOLUTION OF ISSUES BY THE EASTERN DISTRICT
OF TEXAS, OR, IN THE ALTERNATIVE, MOTION TO DISMISS**

MORRIS NICHOLS ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
jparrett@mnat.com
*Attorneys for Plaintiff*

OF COUNSEL:

Thomas N. Tarnay
SIDLEY AUSTIN, LLP
717 N. Harwood, Suite 3400
Dallas, TX 75204
(214) 981–3300

December 10, 2007
1330738

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

    I.     BACKGROUND SPECIFIC TO SCREENTONE NAMING KM
           PRINTING IN THE TEXAS ACTION.............................................................. 3

    II.    BACKGROUND SPECIFIC TO SCREENTONE'S DEFICIENT
           TITLE TO ALL THE RIGHTS AND INTEREST IN AND TO
           THE '809 PATENT.......................................................................................... 5

THE INSTANT ACTION IS THE FIRST-FILED ACTION......................................... 6

    I.     SCREENTONE'S NAMING OF KM PRINTING, A NON-
           EXISTENT ENTITY, AS A DEFENDANT IN THE TEXAS
           ACTION WAS NOT A MERE MISNOMER......................................................... 7

    II.    SCREENTONE LACKED STANDING TO BRING THE TEXAS
           ACTION ........................................................................................................ 10

          A.    Screentone Lacks Any Interest in the '809 Patent.................................. 10

          B.    The "Papers" Screentone Submitted to the Texas Court Do
                Not Cure Screentone's Lack of Standing................................................. 12

                1.    The Repossession Agreement Does Not Effectuate a
                        Transfer of the '809 Patent .......................................................... 12

                2.    The "Assignment" From Mr. Snypp To APAC Is
                        Not A True Patent Assignment ................................................... 15

    III.   THIS IS THE ONLY ACTION CURRENTLY INVOLVING ALL
           THE NECESSARY PARTIES THAT COULD POTENTIALLY
           CLAIM AN INTEREST TO THE '809 PATENT............................................. 16

DELAWARE IS THE APPROPRIATE FORUM FOR RESOLVING THIS
DISPUTE .................................................................................................................... 17

CONCLUSION .......................................................................................................... 19

ii.

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Airport Investors Ltd. P'ship, et al. v. Douglas J. Neatrour, et al.*
    Civ. No. 03-831-GMS, 2004 U.S. Dist. LEXIS 1391 at *6 (D. Del.
    2004)          6

*Arachnid, Inc. v. Merit Indus., Inc.*
    939 F.2d 1574 (Fed. Cir. 1991)      12

*Argenbright v. Phoenix Fin. Co. of Iowa*
    21 Del. Ch. 288 (1936)      4

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*
    434 F.3d 1336 (Fed. Cir. 2006)      16

*C.R. Bard, Inc. v. Guidant Corp.*
    997 F. Supp. 556 (D. Del. 1998)      17

*Cooper v. Digital Processing Sys., Inc.*
    182 F.R.D. 242 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir.
    1999)      17

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*
    261 U.S. 24 (1923)      11

*Dippold-Harmon Enters., Inc. v. Lowe's Cos., Inc.*
    C.A. No. 01-532-GMS, 2001 U.S. Dist. LEXIS 18547 at * (D.
    Del. 2001)      6

*Enzo APA & Son, Inc. v. Geapag A.G.*
    134 F.3d 1090 (Fed. Cir. 1998)      11

*Genfoot, Inc. v. Payless Shoesource, Inc.*
    Civ. No. 03-398-SLR, 2003 U.S. Dist. LEXIS 22437 at *3 (D. Del.
    2003)      6

*IpVenture, Inc. v. Prostar Computer, Inc.*
    slip op. at p. 5 (Fed. Cir. September 28, 2007)      12

*Lewis v. Cont'l Bank Corp.*
    494 U.S. 472 (1990)      10

*Morrow et al. v. Microsoft Corp.*
    2007 WL 271324, *10 (Fed. Cir. Sept. 19, 2007)      15

iii.

*Paradise Creations, Inc. v. UV Sales, Inc.*
    315 F.3d 1304 (Fed. Cir. 2003) .......... 11

*Paul v. G.P.D.A. Inc.*
    No. 3:02-CV-0834-N, 2003 U.S. Dist. Lexis 20833, at *17-18
    (N.D. Tex. Nov. 18, 2003) .......... 9

*PE Corp. v. Affymetrix, Inc.*, No. 00-629-SLR, 2001 U.S. Dist. LEXIS
    15792, *11 (D. Del. Sept. 27, 2001) .......... 10

*Rhodes-Hochriem Mfg. Co. v. Int'l Ticket Scale Corp.*
    57 F.2d 713 (D. Del. 1932) .......... 12

*Schewe v. USAA Casualty Ins. Co.*
    No. 06-881, 2007 U.S. Dist. Lexis 54668, at *26-27 (E.D. La. Jul.
    27, 2007) .......... 7, 8

*Spencer v. Kemna*
    523 U.S. 1 (1998) .......... 10

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*
    Civ. No. 04-1199-SLR, 2005 U.S. Dist. LEXIS 6797 at *14 n.3 (D.
    Del. 2005) .......... 7

*Switzer v. Comm'r of Internal Revenue*
    226 F.2d 329 (6th. Cir. 1955) .......... 13

*Truth Hardware Corp. v Ashland Prods., Inc.*
    C.A.No. 02-1541-GMS, 2003 WL 118005, at *1 (D. Del Jan. 13,
    2003) .......... 18

*Wilson v. U.S. Government*
    23 F.3d 559 (1st Cir. 1994) .......... 7

Other Authorities

28 U.S.C. § 1404(a) .......... 17

3 JAMES MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15.19(3) (2007) .......... 9

8 Del. C. § 259 .......... 4

Wash. Rev. Code Ann. § 62A.9A-619 (West 2003) .......... 14

iv.

<u>Rules</u>

Fed. R. Civ. P. 15                                            7, 9

Fed. R. Civ. P. 19                                              16

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Konica Minolta Business Solutions U.S.A., Inc. ("KM Business"), filed the above-captioned declaratory judgment action on October 1, 2007, seeking a declaration of invalidity and non-infringement of U.S. Patent No. 5,166,809 ("the '809 patent"), and that the Defendants hold no interest or title in the '809 patent. This action was originally assigned to Chief Judge Gregory M. Sleet, but was referred to Judge Leonard P. Stark on October 10, 2007, for all pretrial proceedings. On November 21, 2007, in lieu of an answer, Defendants filed a Motion to Stay or Transfer Pending Resolution of Issues by the Eastern District of Texas, or, in the Alternative, Motion to Dismiss (the "Motion"). This is KM Business' Brief in Opposition to the Motion.

## SUMMARY OF ARGUMENT

Contrary to Defendants' assertions, this action is the first-filed action between the parties and concerning the '809 patent, and, thus, Defendant's motion to either Stay, Transfer, or Dismiss should be denied. KM Business agrees with Defendants' contentions that the first-filed rule "encourages sound judicial administration" and that the "later-filed action should be stayed pending resolution of the earlier filed action, or transferred to the court in which the earlier-filed action is pending." As set forth more fully within, the instant action is the first-filed action with respect to KM Business, the Defendants, and the subject matter of the actions, the '809 patent. As Defendants have also correctly pointed out, federal courts have long emphasized that the "plaintiff's choice of forum should rarely be disturbed." There are no sufficient grounds presented by Defendants for disturbing KM Business' choice of the District of Delaware as its forum by granting a stay or transfer of the instant action, and there is certainly no sound justification for dismissing the instant action.

In determining the first-filed status of a lawsuit, Delaware courts consider both the identity of the subject matter <u>and</u> the parties in the parallel actions. There are three distinct, but equally compelling, reasons why the instant action is the first-filed action with respect to KM Business, the Defendants, and the '809 patent.  First, in its lawsuit filed in the United States District Court for the Eastern District of the Texas (the "Texas Action"), Screentone Systems Corporation ("Screentone") sued a non-existent entity, Konica Minolta Printing Solutions U.S.A., Inc. ("KM Printing").  However, the present action has been brought by a different company, KM Business.  Screentone has recently sought leave from the court in the Texas Action to amend its complaint, naming KM Business as a defendant.  This amendment is <u>not</u> sought to correct a mere misnomer, as Defendants argue, and it should not relate back to the original filing date of August 8, 2007.  Therefore, Screentone is only entitled to rely on the date seeking amendment (which has not yet been granted) naming KM Business, a date subsequent to KM Business' filing of the instant action.

Second, Screentone lacked standing to file the Texas Action in the first place because of a flaw in the chain of title that leaves it with no interest in the subject of that lawsuit, the '809 patent.  Further, the "papers" that Defendants allude to in their brief supporting this Motion, which they have submitted as exhibits to their briefing in the Texas Action, do not establish Screentone's title to the '809 patent.  The law is clear in the area of patent infringement that if the original plaintiff lacked initial standing, the suit must be dismissed.  Thus, the Texas Action cannot be considered the first-filed action with regard to the '809 patent, the subject matter of both the Texas Action and the instant action.

Third, the instant action is the first, and currently the only action involving all the necessary parties who could potentially claim an interest in the '809 patent.  Even assuming,

arguendo, that Screentone did receive valid title to the '809 patent, the assignments leading to this hypothetical title, namely from Paul S. Snypp ("Mr. Snypp") to Acacia Patent Acquisition Corporation ("APAC"), and from APAC to Screentone, do not include the right to sue for infringing activity prior to the dates of the respective assignments.  Accordingly, to the extent any of Mr. Snypp, APAC, or Screentone argue that they possess any interest in the '809 patent, Mr. Snypp and APAC each retain the right to sue for infringing activity that occurred prior to the dates of their assignments.  Screentone has sought leave from the Texas court to amend its complaint (which has yet to be granted) to add APAC and Mr. Snypp as parties.  However, leave was sought subsequent to KM Business filing the instant action.

Additionally, Delaware is a more appropriate forum for the resolution of this dispute. None of the parties to either the instant action or the Texas Action has significant connections to Texas.  Conversely, KM Business filed the instant action in Delaware on the basis that all three of the corporate Defendants, Screentone, APAC and Acacia Research Corporation ("Acacia Research"), are organized and existing under the laws of Delaware.  Thus, an action proceeding in this Court would not prejudice or inconvenience these Defendants in any way.

<u>STATEMENT OF FACTS</u>

I.    BACKGROUND SPECIFIC TO SCREENTONE NAMING KM PRINTING IN THE TEXAS ACTION

Screentone filed the Texas Action on August 8, 2007, against KM Printing and six other defendants, charging them with infringement of the '809 patent.  However, prior to the filing of that action, on or about July 1, 2007, KM Printing was merged into a different corporation, KM Business, and thereafter ceased to exist.  (Declaration of Thomas N. Tarnay in Opposition to Defendants' Motion to Stay or Transfer ("Tarnay Decl."), Exhs. 1 & 2).  KM Printing promptly notified the Delaware Secretary of State, KM Printing's state of incorporation, of its updated

4.

status as a "merged" entity.  (Tarnay Decl., Exhs. 1 & 2).  Thus, on the date that the Texas

Action was filed, KM Printing was no longer an existing legal entity and lacked the capacity to

either be sued or to have process served upon it.  See 8 Del. C. § 259(a) (2007); *Argenbright v.*

*Phoenix Fin. Co. of Iowa*, 21 Del. Ch. 288, 292 (1936) ("[w]hen a consolidation or merger has

taken place under the statute, the old corporations have their identity absorbed into that of the

new corporation or the one into which they were merged.").  As a result, KM Printing filed a

motion to dismiss in the Texas Action on October 1, 2007, identifying KM Printing's lack of

capacity to be sued, in addition to Screentone's lack of standing given its deficient interest in the

'809 patent, as the bases for the motion.  That motion is still pending in the Texas court.

In March of 2006, over a year prior to the merger of KM Business and KM Printing,

Acacia Technologies Group, a parent company of the later-formed Screentone, addressed a letter

to KM Business claiming that the manufacture and sale of certain of Konica Minolta's printer

products were covered by the '809 patent.  (Tarnay Decl., Exh. 3).   At that time, KM Business

and KM Printing were separate entities, selling separate lines of printing and related products.

As set forth in the declaratory judgment complaint, on October 1, 2007, the same day KM

Printing filed its motion to dismiss in the Texas Action, KM Business exercised its independent

right to file the instant action seeking a declaratory judgment that the '809 patent is both not

infringed by KM Business' products and invalid in whole or in part, and that the Defendants do

not hold any interest in the '809 patent and, therefore, lack standing or right to sue for patent

infringement.

Screentone has recently sought leave of court in the Texas Action to file an amended

complaint to substitute KM Business as a defendant in that lawsuit.  However, Screentone

incorrectly assumes this amended complaint will relate back to its original filing date.  It will not,

as demonstrated herein.  Thus, October 1, 2007, the date the instant action was filed, is the date

of "first-filing" with respect to any action concerning KM Business and the '809 patent.

    II.       BACKGROUND SPECIFIC TO SCREENTONE'S DEFICIENT TITLE TO
               ALL THE RIGHTS AND INTEREST IN AND TO THE '809 PATENT

    Public records show a broken or incomplete chain of title from the inventor of the '809

patent to Screentone.  The '809 patent issued on November 24, 1992, with Craig L. Surbrook

("Inventor Surbrook") as the inventor and SeeColor Corporation ("SeeColor") named as the

assignee of record.  The United States Patent and Trademark Office's ("U.S.P.T.O.") assignment

records indicate that Inventor Surbrook assigned the '809 patent to SeeColor Corporation on

September 6, 1990.  (Tarnay Decl., Exh. 4).  On August 3, 2005, without explaining whether or

how he obtained the patent, Mr. Snypp allegedly granted all rights and title in and to the '809

patent to APAC by virtue of an assignment, which was recorded in the U.S.P.T.O.'s assignment

records on October 25, 2005.  (Tarnay Decl., Exhs. 4 & 5).  Subsequently, on June 18, 2007,

APAC allegedly assigned all of its rights and interests in and to the '809 patent to Screentone by

virtue of an assignment, which was recorded in the U.S.P.T.O.'s assignment records on July 16,

2007.  (Tarnay Decl., Exhs. 4 & 6).

    Mr. Snypp was both an officer and creditor of SeeColor (Tarnay Decl., Exhs. 7 & 8).

SeeColor, incorporated under the laws of the State of Washington, became inactive as of

June 30, 2004.  (Tarnay Decl., Exh. 9).  However, the U.S.P.T.O.'s assignment records contain

no record of any assignment of the '809 patent from SeeColor to Mr. Snypp. (Tarnay Decl., Exh.

4).  Nor is there any record of SeeColor assigning the '809 patent to either APAC or Screentone.

(Tarnay Decl., Exh. 4).  In the Texas Action, Screentone has introduced a Repossession and

Disposition Agreement ("the Repossession Agreement") entered into between SeeColor and

Mr. Snypp on October 21, 2003, as evidence of the assignment of the '809 patent to Mr. Snypp.

(Tarnay Decl., Exh. 10). However, as will be detailed below, this Repossession Agreement did not effect a present transfer of rights; it merely imposed an obligation on SeeColor to do so in the future, seemingly in a subsequent written assignment.

As evidence of a purported complete transfer of rights between Mr. Snypp and APAC, Screentone has introduced an agreement between these parties in the Texas Action ("the APAC Agreement"). (Tarnay Decl., Exh. 11). Similar to the Repossession Agreement, the APAC Agreement states that Mr. Snypp "shall" assign the entire right, title, and interest, including the right to sue for past damages. Again, this language contemplates a future written assignment that actually conveys the right to sue for past damages, a document Screentone has failed to produce in either action.

## THE INSTANT ACTION IS THE FIRST-FILED ACTION

In their brief, Defendants have selectively cited case law from this Court to support their notion that the first-filed analysis turns only on which court first obtains possession of the subject of the dispute. On the contrary, this Court has consistently considered the identity of both the subject matter <u>and</u> the parties of the concurrent actions. *See Airport Investors Ltd. P'ship, et al. v. Douglas J. Neatrour, et al.*, Civ. No. 03-831-GMS, 2004 U.S. Dist. LEXIS 1391 at *6 (D. Del. 2004) (stating that for "cases of federal concurrent jurisdiction involving the <u>same parties</u> and <u>issues</u>, the court of first-filing must proceed to decide the matter") (emphasis added); *Genfoot, Inc. v. Payless Shoesource, Inc.*, Civ. No. 03-398-SLR, 2003 U.S. Dist. LEXIS 22437 at *3 (D. Del. 2003) (granting a transfer to the district of the first-filed action after finding the cases involve "the <u>same parties</u>, the <u>same patent</u>, and the <u>same legal theories</u>") (emphasis added); *Dippold-Harmon Enters., Inc. v. Lowe's Cos., Inc.*, C.A. No. 01-532-GMS, 2001 U.S. Dist. LEXIS 18547 at * (D. Del. 2001) ("The 'first-filed' rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the <u>same issues</u>, between the <u>same parties</u>, in more

than one federal court.") (emphasis added).  The sections below will demonstrate that this Court clearly possesses first-filed status with respect to not only the issues surrounding the validity and potential infringement of the '809 patent, but also KM Business and all necessary parties that may claim an interest in the '809 patent.

I.    SCREENTONE'S NAMING OF KM PRINTING, A NON-EXISTENT ENTITY, AS A DEFENDANT IN THE TEXAS ACTION WAS <u>NOT</u> A MERE MISNOMER

As previously discussed, the present action must be considered the first-filed action with respect to KM Business, an entity not initially named in the Texas Action.  *See SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, Civ. No. 04-1199-SLR, 2005 U.S. Dist. LEXIS 6797 at *14 n.3 (D. Del. 2005) (noting that if the two related parties, each involved in a separate, concurrent dispute, are in fact two distinct companies "then the first to file rule would not apply").  Defendants argue that Screentone's error in suing KM Printing, a non-existent entity, amounts to a misnomer, correctable under Rule 15(c).  Thus, under Rule 15, Defendants contend this amendment should relate back to the original filing date of the Texas Action.  However, it is well settled that an amendment of a complaint with relation back is only permitted to correct "a mistake concerning the identity of the proper party."  *See* Fed. R. Civ. P. 15(c)(3); *see also Schewe v. USAA Casualty Ins. Co.*, No. 06-881, 2007 U.S. Dist. Lexis 54668, at *26-27 (E.D. La. Jul. 27, 2007) (citing *Wilson v. U.S. Government*, 23 F.3d 559, 563 (1st Cir. 1994)).  As explained by the 1st Circuit:

> [T]here [is] no "mistake concerning the identity of the proper party," as required
> by Rule 15(c)(3) . . . [where Plaintiff] merely lacked knowledge of the proper
> party.  In other words, [Plaintiff] fully intended to sue [the named Defendant], he
> did so, and [that Defendant] turned out to be the wrong party.  We have no doubt
> that Rule 15(c) is not designed to remedy such mistakes.

*Wilson*, 23 F.3d at 563.

In the Texas Action, Screentone's error was not merely a mistake as to the name of the proper defendant.  In other words, Screentone's error was not simply clerical or typographical in

nature.  *See Schewe*, 2007 U.S. Dist. Lexis 54668, at *27 (finding that because the plaintiff did

not merely misspell the defendant's name, Rule 15 did not apply and the amendment could not

relate back to the original petition).  Rather, the facts show that Screentone deliberately and

purposefully identified and sued KM Printing, not KM Business.  In its pre-suit correspondence

regarding the patent-in-suit, Screentone identified the accused products as the "Magicolor laser

printer line."[1] (Tarnay Decl., Exh. 3).  Prior to the July 2007 merger of KM Printing and KM

Business, it was KM Printing – and only KM Printing – that was responsible for selling the

Magicolor laser line of printers in the United States.  (Declaration of Bryan Hack ("Hack Decl."),

¶ 6).  Although KM Business also sold printers, KM Business was not responsible for the sale of

the Magicolor laser line of printers and did not advertise or promote the sale of the Magicolor

laser line of printers as part of its business.  (Hack Decl., ¶ 7).  Indeed, the only printers accused

by Screentone and its related companies prior to the filing of the suit were printers promoted and

sold by KM Printing.  Thus, this is not a situation where a single KM company sold printers and

Screentone clearly intended to sue that specific printer company but accidentally sued a

similarly-named company that did not sell printers.  The facts lead to only one objective

deduction—when filing suit, Screentone targeted KM Printing, the only company whose

products it had accused in the pre-suit letter, and not KM Business.

Simply put, Screentone's "mistake" was not one of identity.  Under the test set forth by

the Defendants in their present Motion, in deciding whether to allow a Rule 15(c) amendment,

---

[1]      Screentone's letter identified the Magicolor laser printer line "and potentially additional
Konica Minolta printing systems," but did not suggest what these additional printing
systems might be.  While this letter identifies the accused printers as the "Magicolor laser
printer line," the letter is addressed to KM Business.  However, any misunderstanding by
Screentone as to which KM entity sold and offered to sell the accused Magicolor laser
line of printers was cleared by August 7, 2007 when Screentone filed suit against KM
Printing, the sellers of the Magicolor printers.

the question is whether the "plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended." *Paul v. G.P.D.A. Inc.*, No. 3:02-CV-0834-N, 2003 U.S. Dist. Lexis 20833, at *17-18 (N.D. Tex. Nov. 18, 2003). The facts clearly reveal that the opposite is true: Screentone intended to sue KM Printing (indeed, its pre-suit accusations were limited to KM Printing products), made *no mistake* as to the name of KM Printing, and actually served what had been KM Printing's agent. The mistake, if any, by Screentone was its own oversight in suing this company in spite of the fact that KM Printing had ceased to exist before the lawsuit. If Screentone had conducted the appropriate due diligence, *e.g.*, by inquiring with the Delaware Secretary of State (where KM Printing is incorporated), Screentone would have readily ascertained the status of KM Printing. (Tarnay Decl., Exhs. 1 & 2).

Additionally, it is notable that most cases allowing Rule 15(c) amendments involve facts where a statute of limitations has lapsed. 3 JAMES MOORE ET AL., MOORE'S FEDERAL PRACTICE § 15.19(3) (2007). In these cases, courts permit amendments relating back to the original pleading in order to avoid the harsh result of eliminating a plaintiff's ability to file suit. In contrast, there is no statute of limitations at issue in the present matter. Screentone and the other Defendants are free to pursue their claims under the patent in the instant action here in Delaware.

In summary, Screentone's amendment to name KM Business as a defendant in the Texas Action does not fall under the purview of Rule 15(c) and should not relate back. Thus, in determining which action is the first-filed action, Screentone should not be entitled to the original filing date of the Texas Action with respect to KM Business. Because the present action was filed prior to Screentone's amendment in the Texas Action naming KM Business, the

present action must be considered the first-filed action concerning the parties and the '809 patent.

II.      <u>SCREENTONE LACKED STANDING TO BRING THE TEXAS ACTION</u>

A.      <u>Screentone Lacks Any Interest in the '809 Patent</u>

Beyond suing a company that had ceased to exist, when Screentone filed the Texas Action, Screentone lacked, and continues to lack, any interest in the '809 patent and, thus, did not have standing to bring that action.  This Court has held that where the plaintiff in the first suit lacks standing, the later-filed suit becomes the first-filed action.  *PE Corp. v. Affymetrix, Inc.*, No. 00-629-SLR, 2001 U.S. Dist. LEXIS 15792, *11 (D. Del. Sept. 27, 2001).

Defendants would contend that the title of the '809 Patent has passed from SeeColor, the original assignee, to Mr. Snypp, from Mr. Snypp to APAC, and finally from APAC to Screentone.  However, there is a clear gap in the alleged chain of title from SeeColor to Mr. Snypp.  The U.S.P.T.O.'s assignment records have no record of any assignment of the '809 patent from the original assignee of record, SeeColor, to Mr. Snypp, APAC, or Screentone.  (Tarnay Decl., Exh. 4).  Because there are no records of SeeColor assigning away any of its rights and interests in the '809 patent to any individual or entity, this Court must conclude that SeeColor still retains all rights and interests in and to the '809 patent.  Accordingly, Screentone has no valid title or legal interest in the '809 patent, nor the right to sue and recover for any and all infringements thereof.

The general rule in federal cases is that a plaintiff must have initial standing and "continue to have a 'personal stake in the outcome' of the lawsuit."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  Here, based on the public record, Mr. Snypp was without right, authorization, title, license or permission from SeeColor to assign the '809 patent to APAC in August 2005.  (Tarnay Decl., Exhs. 4 and 5).

11.

Moreover, APAC was without right, authorization, title, license or permission from SeeColor to assign the '809 patent to Screentone when it attempted to do so in June 2007. (Tarnay Decl., Exhs. 4 and 6). Thus, Mr. Snypp's assignment to APAC, and APAC's later assignment to Screentone, are both void and unenforceable since neither Mr. Snypp nor APAC had any right, title, license or permission from SeeColor to assign the '809 patent. For that reason, Screentone does not hold any valid title or legal interest in and to the '809 patent, and as a result, had no standing or right to sue for infringement of the '809 patent in the Texas court. *See Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40 (1923) ("The plaintiff in an action at law must be the person or persons in whom the legal title to the patent resided in at the time of infringement") (internal citation omitted); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (finding "a suit for infringement must ordinarily be brought by a party with legal title to the patent").

Screentone has recently sought leave from the Texas court to amend its complaint to add APAC and Snypp as parties to correct further defects in title because APAC and Snypp each failed to convey the right to seek past damages to their successor. (Tarnay Decl., Exhs. 5 & 6). However, in the area of patent infringement, the Federal Circuit has held that if the original plaintiff lacked initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). Thus, any attempt to correct those defects does not address the root issue – that Paul Snypp did not receive an assignment in the first place and thus could not, in turn, assign the patent to APAC.

12.

B.     The "Papers" Screentone Submitted to the Texas Court Do Not Cure
       Screentone's Lack of Standing

In their Motion, Defendants allude to the fact that they have documented and detailed

Screentone's ownership of the '809 patent in "papers" presently before the Texas court and, thus,

established Screentone's standing to bring the Texas Action.  Curiously, the Defendants did not

attach these "papers" as exhibits to the current Motion, but KM Business has done so in this

Response in order to address them.  (*see*, Tarnay Decl., Exhs. 10 & 11).

1.     The Repossession Agreement Does Not Effectuate a Transfer of
       the '809 Patent

Screentone has argued in the Texas Action that Mr. Snypp acquired the '809 patent from

SeeColor by virtue of the Repossession Agreement with SeeColor.  (Tarnay Decl., Exh. 12, pp.

3-4).  However, the Repossession Agreement merely states that SeeColor "shall" assign its

patents to Mr. Snypp, using the future tense.  (Tarnay Decl., Exh. 10).  An agreement to assign

does not convey an interest in a patent; transfer of the interest must be implemented by written

assignment.  *IpVenture, Inc. v. Prostar Computer, Inc.*, slip op. at p. 5 (Fed. Cir. September 28,

2007); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991) (agreement

using phrase "will be assigned" is an agreement to assign, not a present assignment); *Rhodes-

Hochriem Mfg. Co. v. Int'l Ticket Scale Corp.*, 57 F.2d 713, 714 (D. Del. 1932) ("An instrument

which does not purport to convey a present interest in a patent is not an assignment within the

statute").

More specifically, the Repossession Agreement in paragraph 2 states:

Debtors [SeeColor] <u>shall</u> release and assign to Creditor [Mr. Snypp] all of
Debtor's rights, title and interest in and to the secured collateral by:

                    *       *       *

c. Assignment of all patents and patent rights owned by Debtor.  Said patents and
patents pending are <u>identified on Exhibit 3 hereto</u>.

All transfers/assignments <u>shall</u> be endorsed by Debtor upon execution of this agreement.

(Tarnay Decl., Exh. 10) (emphasis added).

This language does not effect an actual, present transfer of rights, but instead merely creates an obligation on the part of SeeColor to do so. In particular, the language does not state that SeeColor "hereby assigns" its patents. Instead, it uses the future tense to state that SeeColor "shall" assign its patents. The language even indicates how this shall be done – "by . . . Assignment" – and specifically contemplates that the required Assignments "shall" be endorsed by SeeColor upon execution of the Repossession Agreement. (Tarnay Decl., Exh. 10). Screentone has produced no written assignment from SeeColor to Mr. Snypp that was executed or "endorsed" by SeeColor.

Moreover, although Screentone points to this Repossession Agreement to demonstrate Mr. Snypp's acquisition of the '809 patent, the agreement never identifies the '809 patent by name or indicates in any way that this particular patent is part of the property that shall be assigned. Instead, paragraph 2, part (c) states that the patents owned by SeeColor are "identified on Exhibit 3 hereto." Notably, Exhibit 3 has never been provided to the court in the Texas Action. Therefore, Screentone has failed to provide any evidence that the '809 patent was the property contemplated by this agreement and that it had not been previously assigned by SeeColor to another person or entity. While there is no particular form required for the transfer of a patent, the case law is clear that the "instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with <u>the patent</u>." *Switzer v. Comm'r of Internal Revenue*, 226 F.2d 329, 330 (6th. Cir. 1955) (emphasis added). Certainly, this agreement does not indicate SeeColor's unambiguous, clear, and unmistakable intent to part with the '809 patent.

14.

Screentone has argued in the Texas Action that paragraph 2 of the Repossession Agreement must be considered in conjunction with paragraphs 4, 7, and 8 to effect an assignment of the '809 patent. (Tarnay Decl., Exh. 13, pp. 5-6). However, paragraph 2 is entitled "Transfer/Assignment of Interest" and provides no indication this paragraph must be considered in conjunction with any other sections of the agreement to effect an assignment. (Tarnay Decl., Exh. 10) Further, paragraph 4 does nothing to cure the deficiencies of paragraph 2. Paragraph 4 does not clarify the patents owned by SeeColor or indicate SeeColor's clear intent to presently transfer the rights to the '809 patent. Instead, paragraph 4 is simply an acknowledgement by the creditor that the collateral is sufficient to discharge the debt. (Tarnay Decl., Exh. 10).

Paragraph 7 is entitled "Transfer of Legal Title" and purports to make a transfer statement in accordance with Washington statute RCW 62A.9A.619. (Tarnay Decl., Exh. 10). However, such a transfer statement does not, in and of itself, effect a transfer of rights. Instead, to obtain amendment of official records regarding title to collateral, a transferee must present the transfer statement, together with the applicable fee and a request form, to a relevant official or office responsible for maintaining records of ownership. Wash. Rev. Code Ann. § 62A.9A-619 (West 2003) (Tarnay Decl., Exh. 14).

Finally, paragraph 8 simply entitles Mr. Snypp to possession of the collateral. (Tarnay Decl., Exh. 10). Paragraph 8 does not in any way indicate a present transfer of the ownership rights to the intangible collateral, such as patent rights, nor does this paragraph disclose or specify the patents owned by SeeColor and contemplated by the Repossession Agreement.

Screentone may argue that Mr. Snypp had an equitable interest in the '809 patent, based on the purported obligation imposed on SeeColor by the Repossession Agreement to assign that

patent to Mr. Snypp.  Even if Mr. Snypp did have an equitable interest in the '809 patent, which

was conveyed to APAC and then to Screentone, equitable title to a patent is insufficient to confer

standing to sue for infringement.  *Morrow et al. v. Microsoft Corp.*, 2007 WL 271324, *10 (Fed.

Cir. Sept. 19, 2007).

Accordingly, Screentone has failed to show that SeeColor conveyed valid title to any

patent, much less the '809 patent, to Mr. Snypp, and therefore Screentone has failed to meet its

burden of proving that it had standing to bring the Texas action.

2.    The "Assignment" From Mr. Snypp To APAC Is Not A True
Patent Assignment

In addition to the clear deficiencies of the Repossession Agreement, it is also unclear

whether the "Assignment" from Mr. Snypp to APAC is actually an assignment at all.  Thus,

there are further doubts about title such that even if the Repossession Agreement were to have

assigned ownership to the '809 patent, it is not clear that Mr. Snypp in turn assigned the patent to

APAC.  Instead, it appears that Mr. Snypp retained significant rights in the '809 patent, including

the right to grant licenses in addition to the right to sue for past infringement.  Specifically,

although he executed the purported Assignment to APAC on August 3, 2005 (Tarnay Decl., Exh.

5 & Exh. 11 at Exhibit B), Mr. Snypp executed a Non-Exclusive License Agreement with

NewsColor LLC ("NewsColor") weeks later on August 22, 2005.  (Tarnay Decl., Exh. 11 at

Exhibit C).  Moreover, it is telling that Mr. Snypp purported to be the owner of the '809 patent as

of August 22, 2005 (Tarnay Decl., Exh. 11 at Exhibit C), despite executing an earlier

"Assignment" to APAC on August 3, 2005.  (Tarnay Decl., Exh. 5 & Exh. 11 at Exhibit B).  It is

also interesting that the "Governing People" of NewsColor are Karen C. Barr, Paul Snypp, and

Ronald D. LaForge (who also was one of the SeeColor "Board members" who approved the

resolution to agree to Mr. Snypp's foreclosure claims).  (Tarnay Decl., Exhs. 15 & 16).

Mr. Snypp's representation that he was owner of the '809 patent, and his grant of a license to

NewsColor after he executed the purported Assignment to APAC (and his representation in the

license agreement that he was still owner of the '809 patent) strongly suggests that he retained

substantial rights in the '809 patent.  An agreement in which the transferor retains substantial

patent rights is not an assignment.  *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336,

1341-42 (Fed. Cir. 2006).

Since Screentone produced only a redacted copy of the APAC Agreement in Texas, it is

unclear exactly what rights were retained by Mr. Snypp.  (Tarnay Decl., Exh. 11).  Based on the

facts of record, however, Mr. Snypp retained substantial rights in the '809 patent, and Screentone

has failed to prove that APAC (and hence Screentone) was a true assignee.

For the reasons detailed above, Screentone has failed to prove that it had any rights to the

'809 patent and, therefore, lacked standing to file and maintain the Texas Action.  Thus, this

Court must find that it is the first court to obtain possession of the subject of the dispute, the '809

patent, and, consequently, that it is the Court with the complaint entitled to "first-filed" status.

III.    THIS IS THE <u>ONLY</u> ACTION CURRENTLY INVOLVING ALL THE
        NECESSARY PARTIES THAT COULD POTENTIALLY CLAIM AN
        INTEREST TO THE '809 PATENT

APAC and Mr. Snypp are necessary parties to any action involving the '809 patent

because, in their absence, "complete relief cannot be accorded among those already parties."

Fed. R. Civ. P. 19(a)(1).  In the respective assignments of their purported rights, APAC and Mr.

Snypp has each retained the right to seek damages for alleged infringement of the '809 patent

over different periods of time.  (Tarnay Decl., Exhs. 5 & 6)  Further, as discussed above, it is not

clear that Mr. Snypp's assignment to APAC is truly an assignment at all.  Thus, KM Business

cannot obtain complete relief with respect to any claim of infringement of the '809 patent unless

both APAC and Mr. Snypp are parties to the lawsuit.  Any action proceeding without Mr. Snypp

and APAC would leave KM Business at risk of facing future litigation over the '809 patent and, thus, "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(2)(ii); s*ee Cooper v. Digital Processing Sys., Inc.*, 182 F.R.D. 242, 248 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999) (finding complete relief required joinder of absent party with "right to sue" on patent).

Both APAC and Mr. Snypp have been parties to this lawsuit from its inception on October 1, 2007. Subsequent to the instant action being filed, Screentone sought leave of court in the Texas Action to file an amendment to add both APAC and Mr. Snypp as plaintiffs (the court has not yet allowed this amendment). Therefore, with respect to both APAC and Mr. Snypp, the instant action is not only the first-filed action, it is currently the only action involving these necessary parties.

## DELAWARE IS THE APPROPRIATE FORUM FOR RESOLVING THIS DISPUTE

Although Defendants' motion requests a transfer to the Eastern District of Texas, their brief is conspicuously void of any analysis under 28 U.S.C. § 1404(a). This section provides that a district court may transfer any civil action "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). It is unlikely this was an accidental oversight on the part of the Defendants as an inquiry under this section clearly favors the action proceeding in Delaware. None of the parties to the instant action has any significant connection to the state of Texas. While KM Business admittedly conducts business in the state of Texas, on that basis any of the eighty-nine district courts in the fifty states could have been chosen. Screentone simply selected the Eastern District of Texas from a catalog of forums, having no tangible basis for its selection. For this reason alone, it is unclear whether Screentone's choice of forum deserves any deference at all. *See C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998)

(finding that deference to plaintiff's choice of forum will be afforded as long as plaintiff has legitimate reasons for selecting the forum).

In contrast, it is Screentone's burden to establish the need to transfer this action and the "plaintiff's choice of forum [will] not be lightly disturbed." *Truth Hardware Corp. v Ashland Prods., Inc.*, C.A. No. 02-1541-GMS, 2003 WL 118005, at *1 (D. Del Jan. 13, 2003). KM Business selected the District of Delaware for the instant action based on the three corporate Defendants in this action, namely Screentone, APAC, and Acacia Research, having been organized and currently existing under the laws of Delaware. (Tarnay Decl., Exhs. 17-19). These Defendants have thereby affirmatively and voluntarily assented to personal jurisdiction in this state. Moreover, the interests of justice favor Delaware as the forum where all necessary parties are properly joined. Thus, the convenience of the parties and the interests of justice clearly favor the instant action proceeding in Delaware.

19.

<u>CONCLUSION</u>

The instant action is the first-filed action with respect to both KM Business, the

Defendants, and the subject matter of the dispute, the '809 patent.  KM Business was not a party

to the Texas Action and Screentone's amendment to add KM Business should not relate back to

the original filing date.  Further, Screentone has failed to prove to this Court or the Eastern

District of Texas that it has any interest in the '809 patent.   Finally, this action is the first action

naming all the necessary parties who may claim a purported interest in the '809 patent.

Applying the first-filed rule, this Court should hear and decide these matters.  Thus, Defendants'

Motion to stay, transfer, or dismiss the instant action should be denied entirely.

MORRIS NICHOLS ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

_____
Thomas C. Grimm (#1098)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com
jparrett@mnat.com
*Attorneys for Plaintiff*

OF COUNSEL:

Thomas N. Tarnay
SIDLEY AUSTIN, LLP
717 N. Harwood, Suite 3400
Dallas, TX 75204
(214) 981-3300

December 10, 2007
1330738

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on December 10, 2007 upon the following individuals in the manner indicated:

**BY E-MAIL & HAND DELIVERY**

Karen V. Sullivan
OBERLY, JENNINGS & RHODUNDA, P.A.
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, DE  19899

**BY E-MAIL**

Edward R. Nelson, III
David A. Skeels
FRIEDMAN SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, TX  76102

*/s/ Thomas C. Grimm*

_____

Thomas C. Grimm (#1098)
tgrimm@mnat.com

1330738